# Keiser, Appellant, *v.* Commissioners of Union County.

*Bridges—County commissioners—Acts of June 8, 1881, and June 16, 1891.*

The main purpose of the act of June 16, 1891, P. L. 305, amending the act of June 8, 1881, P. L. 67, relating to the reconstruction of bridges, was to take away the absolute discretion lodged by the earlier act in the county commissioners to rebuild bridges or not, according to their judgment of the necessity for the accommodation of the public.

The only difference between the two acts was that, under the act of 1881, an absolute discretion as to rebuilding was lodged in the commissioners, while under the act of 1891 the commissioners might be compelled to rebuild by mandamus upon the petition of ten citizens and taxpayers.

*Inter-county and intra-county bridges—Reconstruction.*

The act of June 16, 1891, P. L. 305, provided as follows: "The county commissioners of the several counties . . . . are authorized to rebuild . . . . any bridge over any stream or river running into or through any county . . . . or where such bridge crosses a stream forming the boundary line between two counties, then the commissioners of the county in which said bridge is located . . . . or the commissioners of the respective counties where the stream or river runs between counties, are hereby authorized," to rebuild, etc.   *Held,* that the legislature intended to provide for only two classes of bridges—those wholly in one county, and those partly in one county and partly in another; as to the first class it is the duty of the county commissioners of the county to repair the bridge; as to the second class the commissioners of the respective counties are required to do so jointly.

There is no real difference between the two phrases, "forming the boundary line between two counties," and "running between counties." A stream is equally the boundary whether the line is at its middle or at its edge, and a stream is equally between two counties whether it is all in one or half in each.

*Local act of* 1813—*Union and Northumberland counties.*

The act creating Union county from a portion of Northumberland county provided that: "All that part of Northumberland county lying on the west side of the river Susquehanna, and the west branch of the same, is hereby erected into a separate county henceforth to be known by the name of Union." *Held,* that the commissioners of Northumberland county and Union county were required jointly to rebuild a bridge connecting the two counties.

Argued May 9, 1893.    Appeal, No. 398, Jan. T., 1893, by plaintiffs, B. F. Keiser et al., from order of C. P. Union Co., March T., 1892, No. 14, refusing writ of mandamus.    Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Petition for mandamus to compel reconstruction of bridge.

From the record the facts appeared substantially as follows: The Milton Bridge Co. was incorporated by act of April 6, 1830, P. L. 281.    The corporation was authorized to erect a bridge across the West Branch of the Susquehanna river opposite the borough of Milton.    The bridge was constructed in three parts.    It commenced opposite Mahoning street, in the borough of Milton, in the county of Northumberland, and the first part was built to an island.    The second part was built from the first to a second island, and the third part from the second island to Kelly township, Union county.

On June 2, 1889, the bridge was completely destroyed by an unprecedented flood in the river Susquehanna.    The ruins of the bridge were abandoned by the corporation, and all of the company's right and title to the piers, abutments, etc., have been released by the Milton Bridge Company to the counties of Union and Northumberland.

The act of June 16, 1891, P. L. 305, amending the act of June 8, 1881, P. L. 67, is as follows:

"Section 1. That the county commissioners of the several counties of this commonwealth are hereby authorized to take charge of, rebuild and reconstruct any bridge over any stream

or river running into or through any county owned and maintained by corporations, when the same was destroyed by ice or otherwise, or abandoned by the owners of said bridge, or where such bridge crosses a stream forming the boundary line between two counties, then the commissioners of the county in which said bridge is located, or has been located, or the commissioners of the respective counties where the stream or river runs between counties, are hereby authorized to jointly reconstruct and maintain such bridge as a county bridge. If the said commissioners shall neglect or refuse to act as herein provided, upon the petition of ten citizens and taxpayers residing in the city, borough or township in which the bridge is to be located, which petition shall set forth fully all the facts supported by the affidavits of two of said citizens to the court of common pleas of the county, and said court, upon hearing, may issue a mandamus compelling said commissioners to proceed as provided by this act."

Following the directions of the act, a demand was made upon the commissioners of Union county to take charge of and rebuild the Milton bridge, jointly with the commissioners of Northumberland county. This the Union county commissioners refused to do, and a petition, signed by the taxpayers of Kelly township, Union county, in which the approach and one abutment of the bridge was located, was presented to the court of common pleas of Union county, praying for a mandamus to compel the commissioners to proceed as provided by the act. The court granted a rule to show cause why the mandamus should not be issued. An answer was filed by the commissioners, a large amount of testimony was taken upon both sides, and, after argument, the court discharged the rule and refused to issue the mandamus.

The act of 1813, P. L. 150, organizing the county of Union, provides as follows : " All that part of Northumberland county lying on the west side of the river Susquehanna and the West Branch of the same, be and the same is hereby erected into a separate county, henceforth to be known by the name of Union."

The court, in an opinion by McCLURE, P. J., held that the bridge as originally constructed was wholly within Northumberland county, and that therefore that county alone was bound to reconstruct it.

*Error assigned* was refusal of mandamus.

*Henry C. Parsons* and *S. T. Swartz*, for appellants, cited:
On question of remedy: Com. v. Co. Com'rs, 5 Rawle, 75;
Com. v. Judges, 1 S. & R. 187; Com. v. Phœnix Iron Co., 105
Pa. 113; Com. v. Hyde Park, 15 W. N. 507. On construction
of act of 1891: Com. v. Pittsburgh, 34 Pa. 513; King v. In-
habitants of Derby, Skinn. 370; Newburgh Turnpike Co. v.
Miller, 5 Johns. Ch. 113; Supervisors v. U. S., 4 Wal. 435;
Mason v. Fearson, 9 Howard, 258; Monongahela Navigation
Co. v. Com., 66 Pa. 83; Lancaster Co. v. Frey, 128 Pa. 599;
Fisher v. Connard, 100 Pa. 69; Com. v. Fraim, 16 Pa. 169;
Improvement Co. v. Com., 94 Pa. 455; Reeves v. Continental
Ry., 31 W. N. 281 [152 Pa. 153].

*Wm. R. Follmer* and *J. C. Bucher*, for appellees, cited: On
construction of act of 1891: Gouldsboro v. Coolbaugh Twp.,
87 Pa. 51; act of June 13, 1836, P. L. 560, § 35. On ques-
tion of remedy: Dechert v. Com., 113 Pa. 235; Dillon, Mun.
Corp. 766; Com. v. Pittsburgh, 34 Pa. 496; Com. v. Henry,
49 Pa. 530; Price v. Co. Com'rs, 1 Whart. 3; State v. Super-
visors, 44 Min. 549.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1893:

The act of June 16, 1891, P. L. 305, is very awkwardly drawn
but its general intent is quite clear. It is by its title an act
to amend the act of June 8, 1881, P. L. 67, and its main if not
only purpose was to take away the absolute discretion lodged
by the earlier act in the county commissioners, to rebuild bridges
or not according to their judgment of the necessity for the ac-
commodation of the public. The act of 1891 provides that if
the commissoners neglect or refuse, then ten citizens and tax-
payers may petition the court for a mandamus, as has been
done in the present case. This is the only substantial change
made by the later act, but in undertaking to make the duties
of the commissioners clearer by specifying the cases that may
occur, it raises the present question. The language is, "the
county commissioners of the several counties . . . . are author-
ized to rebuild . . . . any bridge over any stream or river run-
ning into or through any county . . . . or where such bridge

crosses a stream forming the boundary line between two counties, then the commissioners of the county in which said bridge is located . . . . or the commissioners of the respective counties where the stream or river runs between counties, are hereby authorized " etc.    There is nothing in this language which fairly justifies the idea that the legislature meant to provide for more than two classes of bridges, those wholly in one county, and those partly in one county and partly in another.    The former are described as " over any stream or river running into or through any county," and as to them it is provided, " then the commissioners of the county in which said bridge is located " shall rebuild etc.    That this last phrase applies to the previous one quoted, and to it only, is reasonably certain, although they are separated by an awkward break in the sentence, in which the other class of bridges is described, to wit, those crossing a stream forming the boundary line between two counties.    A stream is equally the boundary line whether the line is its middle thread or its westernmost ripple.    To find the boundary you must find the stream, and then the part of it defined as the line, but wherever that is it is the stream, and it is the boundary only because of that fact.    No matter whether the boundary is the middle or the edge of the stream, the bridge must connect with both banks, and the moment it does so, even if only with an abutment, there is no longer any one county in which it is located.    The learned judge meets this point by saying it is not the bridge but the stream forming the boundary line or flowing between counties, that determines the status.    But he overlooks the fact that the mandatory direction to rebuild is given to " the commissioners of the county in which said bridge is located," and in the case under discussion there is no such county, and it must of necessity be referred to the next member of the sentence, " the commissioners of the respective counties." There would be no difficulty in this were it not that the draftsman of the act added at this point the words, " where the stream or river runs between counties."    This may have been inadvertent, but even if intentional it is by no means an unprecedented instance of a writer expressing his meaning clearly enough, but then, entertaining a doubt about it, proceeding to say it over again, and immediately raising an ambiguity.    The two phrases, however. " forming the boundary line between two

counties " and " running between counties " make a distinction without any real difference. As already shown a stream is equally the boundary whether the line is at its middle or its edge, and, on the other hand, a stream is equally between two counties whether it is all in one or half in each. Accurately speaking, as the learned judge below points out, there is no stream between counties, for that implies something interposed which is not part of either. But in the popular and ordinary use of language, which the legislature is presumed to intend, between two counties means having one on one side and another on the other, and that is exactly the meaning of forming the boundary line between counties. The two expressions are used synonymously, and the obvious meaning of the statute, disentangled from its involved arrangement, and put into connected form, is that a bridge over a stream running into or through any county, (that is, wholly in one county) shall be rebuilt by the commissioners of that county, but bridges over streams forming boundary lines between counties, or running between counties, (that is, having one county on one side and another county on the other side) shall be rebuilt by the commissioners of the " respective counties."

We have not reviewed the merits of the case, as on them we understand the learned court below to be with the appellants, and to refuse the mandamus solely on the ground that the case presented is not within the statute. This we think an erroneous view.

Judgment reversed, and record remitted with instructions to award a mandamus.