## Union County v. Northumberland County.

*Bridges — County bridges — Boundary river — Apportionment of cost between counties—Act of June 20, 1911.*

Where a bridge over a boundary river between two counties has been destroyed by a flood, the cost and expense of the construction of a new bridge must be borne by the two counties in the proportion of their populations, as provided by the Act of June 20, 1911, P. L. 1084.

Case stated. C. P. Union Co., May T., 1923, No. 61.

*Cloyd Steininger,* for plaintiff; *C. M. Clement,* for defendant.

POTTER, P. J., April 30, 1923.—Union County and Northumberland County adjoin each other, the west branch of the Susquehanna River flowing between them; Union County lying on the west side and Northumberland County lying on the east side of it, the line between these two counties being the western shore of this river. The town of Milton is in Northumberland County, on the eastern side, and the town of West Milton is in Union County, on the western side of the said river. These towns have been connected by a bridge across the said river since the year 1830, or thereabouts. In the year of 1889 this said bridge was destroyed by an unprecedented flood. During the years of 1893 and 1894 it was rebuilt by both these counties.

The bridge is in a state of dilapidation and is not safe for public travel. Petitions were duly presented to the Courts of Quarter Sessions of both counties, upon which viewers were appointed. The necessary and legal steps towards the performance of their duties appear to have been jointly taken by the viewers, the joint view was held, and all the viewers, being six in num-

4 D. & C.

ber, reported in favor of building a new bridge. This report was approved by the grand juries, the commissioners and the courts of both counties.

Steps are now being taken towards the building of a new bridge, and the question has arisen as to what amount of the cost and expense thereof is to be paid by each county. Union County claiming that the cost and expense of the new bridge should be apportioned between the two counties in conformity with the Act of June 20, 1911, P. L. 1084, in proportion to the population of each county, by virtue of which Union County's share would be 15 per cent. and Northumberland County's share would be 85 per cent. thereof, while Northumberland County claims the cost should be borne by each in equal proportions.

There appear to be two methods prescribed by the various acts of assembly for the building or rebuilding and maintaining of bridges across streams dividing counties.

The first class is that wherein viewers are appointed on petition and all the proceedings are had under the supervision of the court.

The second class is that wherein the county commissioners proceed to build or rebuild without a view, they taking the initiative.

The first class embraces the proposed construction of bridges anywhere.

The second class embraces bridges owned by corporations, when they are destroyed by ice or otherwise or abandoned by the owners. And in this case we are dealing with bridges over streams forming boundaries between counties, and it makes no difference whether the boundary line runs through the middle of the stream or whether it runs along either shore: Keiser v. Commissioners, 156 Pa. 315.

As to the second class, so herein designated for convenience, the first expression we have from the legislature was by the 1st section of the Act of June 8, 1881, P. L. 67, whereby the county commissioners are "authorized to take charge of and rebuild and reconstruct any bridge that was owned and maintained by corporations, when the same was destroyed by ice or otherwise and abandoned by the owners of said bridge, if, in their judgment, a bridge is necessary for the accommodation of the traveling public; and where such bridge crosses a stream forming the boundary line between two counties, then the commissioners of the respective counties are hereby authorized to jointly reconstruct and maintain such bridge as a county bridge."

It will be noted that no view is authorized, and the counties are to construct and maintain the bridge jointly, in equal proportions.

The next legislation we have on this question is by the Act of June 16, 1891, P. L. 305, which is an amendment of the Act of June 8, 1881, P. L. 67, the provisions of which are re-enacted, to which is added a provision for the issuance of a mandamus on the petition of ten taxpayers, should the commissioners neglect or refuse to act.

Here, again, no view is authorized, and the cost is to be equally borne by the counties.

Although not specifically so stated, this act seems to have been amended by the Act of May 6, 1897, P. L. 46, and the provisions of the former acts herein referred to seem to have been re-enacted with a few additions, the most important, and the one touching on the question herein involved, being the one providing for the cost of the construction of the bridge, which provides: "And the cost and expense of such joint reconstruction shall be paid by the said counties respectively, in the proportion of the population thereof as ascertained at the last census."

Here, again, there is no provision for a view, but we do find a marked change in disposing of the cost of the bridge. Instead of it being borne in equal proportions, it is now to be apportioned according to population.

This act is amended by the Act of May 13, 1901, P. L. 191, in which some additions are made that do not concern the question at issue. In it there is no provision for a view or for viewers, and the expense of the joint construction of the bridge is to be paid by the counties in proportion to their populations.

This act is amended by the Act of July 9, 1901, P. L. 620, in which, as a new provision, it is provided that the commissioners of the respective counties, with the Board of Property of Pennsylvania, are required to rebuild the bridges, the State to pay 50 per cent. of the cost, and the balance to be paid by the counties in proportion to their populations. There is still no provision for a view.

As to the first class hereinbefore mentioned, section 46 of the Act of June 13, 1836, P. L. 560, as amended by the Act of April 23, 1903, P. L. 289, provides for the construction of bridges over any river, creek or rivulet on the line of adjoining counties in the same manner as other county bridges, each county to appoint three viewers, their report to be submitted to the grand jury, the court and to the county commissioners. This section is also further amended by the Act of May 8, 1907, P. L. 185, which does not affect the question here at issue, as neither does the Act of April 23, 1903, P. L. 289, full provision being made for viewers as heretofore.

Section 47 of the Act of 1836 provides for the inspection of the bridge, which shall be maintained and kept in repair at the joint and equal charge of each county. This section is, however, amended by the Act of June 20, 1911, P. L. 1084, which, *inter alia*, provides that "the cost and expense of which joint construction and maintenance and repair shall be paid by said counties respectively, in the proportion of the population thereof as ascertained at the last decennial census."

We have traced down these two series of legislation on the building or rebuilding of county bridges, beginning with the Act of 1836, sections 46 and 47 providing for a view, and ending with the Act of June 20, 1911, P. L. 1084, which provides for the payment thereof in proportion to the population of the respective counties, as of the first class hereinbefore mentioned.

And beginning with the Act of June 8, 1881, P. L. 67, and ending with the Act of July 9, 1901, P. L. 620, where we have it again laid down that the cost is to be borne by the counties in proportion to their respective populations, as of the second class.

We are traveling by two different and distinct roads, and each one brings us to the same ending. Each of these two series of legislation ultimately arrives at the same end, which is, that the cost of the construction of this bridge must be borne by these two counties in proportion to their populations.

It was admitted at the argument that the population of Union County to that of Northumberland County is as fifteen is to eighty-five.

Then, again, these proceedings having been by viewers duly appointed, they must necessarily have been under and by virtue of the Act of 1836 and its supplements and amendments, of which the Act of June 20, 1911, P. L. 1084, is the last.

The Act of June 8, 1881, P. L. 67, and its supplements and amendments, nowhere make any provision for a view, therefore the proceedings in this case could not have been in any way therewith connected.

4 D. & C.

Union County *v.* Northumberland County.

Mention was made at the argument, and it is contended in the brief filed, that this bridge, sought to be replaced, was never recorded as a county bridge by the authorities of Northumberland County. We can only say, if it was not, it should have been. In the first paragraph of the case stated it is admitted that this bridge was constructed in 1893 and 1894 by both counties, and that it has since that time been jointly maintained by them, and the fact that some one in Northumberland County failed to enter this bridge on the records as a county bridge does not prevent it from being such.

We do not know what more to say that will add to this opinion. We have followed out the question at issue from the viewpoints of both the contending parties, and in each instance we arrive at the same conclusion, viz., that the cost and expense of the construction of this bridge must be borne by these two counties in the proportion to their populations, in accordance with the Act of June 20, 1911, P. L. 1084, of which the share of Union County would be 15 per cent. and that of Northumberland County would be 85 per cent.

And now, to wit, April 30, 1923, on the case stated as submitted to the court, in accordance with the views herein expressed, judgment is entered in favor of Union County, the plaintiff, and against Northumberland County, the defendant. From Charles P. Ulrich, Selins Grove, Pa.