

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

June 6, 1966

Honorable Dean Martin
County Attorney
Grayson County
Sherman, Texas

Opinion No. C-703

RE: Authority of Grayson County
to accept a deed from the Kansas-
Oklahoma and Gulf Railroad Company
to a bridge lying between Texas
and Oklahoma spanning the Red
River about 9 miles east of Deni-
son, Texas and related questions.

Dear Mr. Martin:

We have your letter in regards to the above matter.

You have posed the following questions for our con-
sideration.

"1. Would there be any legal objection
for Grayson County, Texas, and Bryan County,
Oklahoma, to accept a joint deed to the
bridge in question which lies across the Red
River?

2. If such a deed is permissible and
legal, could the Commissioners Court of Gray-
son County, Texas, authorize tax monies to
be expended for the operation and maintenance
of that part of the bridge which does not lie
in Grayson County, Texas?"

In passing on this matter, it is pertinent to mention
that the United States Supreme Court passed on the question
of the ownership of the bed of the Red River in the case of
State of Oklahoma v. State of Texas, 261 U.S. 345 (1923),
wherein it was decided that the State of Oklahoma owned such
part of the bed of the Red River as lies north of the medial
line of the river and "The full title and ownership of so
much of the bed of the river as lies south of its medial
line are in the United States".

Here we are concerned with ownership and maintenance
of a bridge which is not only outside the territorial limits
of the County of Grayson but also wholly outside the terri-
torial limits of the State of Texas, with the exception of
the abutment to the bridge on the Texas side, which lies in
Grayson County, Texas.

-3390-

We assume that the road leading to the bridge, or the road to be built is or will be a County road, and not a State Highway. See Attorney General's Opinion O-5775 (1944), which we enclose herewith.

Section 2, Article 11 of the State Constitution provides as follows:

"The construction of jails, court-houses and bridges, and the establishment of county poor houses and farms, and the laying out, construction and repairing of county roads shall be provided for by general laws." (Emphasis added.)

Pursuant to the foregoing provisions of the constitution the following laws touching on the subject were passed:

1. Article 718, Vernon's Civil Statutes, provides, in part, as follows.

"After having been authorized as provided in Chapter One of this title, the Commissioners Court of a county may lawfully issue the bonds of said county for the following purposes:

. . .

4. To purchase and construct bridges for public purposes within the county or across a stream that constitutes a boundary line of the county; or ...." (Emphasis added.)

2. Article 6796, Vernon's Civil Statutes, provides as follows:

"Whenever any stream constitutes either in whole or in part the boundary line between two or more counties, or when two or more counties are jointly interested in the construction of a bridge, whether over a stream or elsewhere, it shall be lawful for the counties so divided or interested to jointly erect bridges over such stream or over any other stream, upon such equitable terms as the Commissioners Court of each county interested may agree upon."

3. Article 2351, Vernon's Civil Statutes, provides, in part, as follows:

"Each commissioners court shall:

. . .

4. Build bridges and keep them in repair.

. . ."

In passing on Article 877, Vernon's Civil Statutes, which is the predecessor of Article 718, and which has substantially the same language as Section 4 of Article 718, supra, the Supreme Court in Bell County v. Lightfoot, Atty. Gen., 104 T. 346, 138 S.W. 381 (1911) held:

"... That the authority to construct bridges for public purposes, embraces the repair and maintenance of such structures."

This holding is also supported by Aransas County v. Coleman-Fulton Pasture Co., 108 T. 216, 191 S.W. 553, (1917).

Touching on the point as to constitutionality of expenditures for bridges crossing streams wholly outside the territorial limits of the state, it is stated in 11 C.J.S. 1015, Bridges, Sec. 17, as follows:

"A state has been held authorized to participate in the construction of interstate bridges as against the contention that the river to be bridged did not form the boundary line where the technical boundary was on the high portion of the bank of such river. ..." Citing Highway Commission of Texas v. Vaughn, 288 S.W. 875, 878 (Tex.Civ.App. 1926, error ref.)

In the Vaughn case, supra, the court stated:

"The contention that Texas cannot pay the costs of any portion of the bridge beyond her territorial limits is also without merit. Article 3, Section 56, Subd. 6 of the Constitution, authorizes the Legislature to enact local or special laws 'for the erection of bridges crossing streams which form boundaries between this and any other state.' No limitation is placed upon this grant of power either with reference to the territory over which an interstate bridge might be constructed or as

to its cost. In fact, the makers of the funda-
mental law knew that one end of an interstate
bridge must of necessity rest within another
state, that territory of both states must be
spanned by it, that the occasion might arise
when such a bridge would be of vital necessity,
or at least of much greater value to this state
than to the other state into which it opened,
and they left all these matters to the Legis-
lature without any restriction upon its authority
to construct the bridge. ... (Emphasis added.)

"In some jurisdictions by Legislative en-
actment the costs of bridges crossing boundary
streams between counties, or in some instances
between cities, are to be borne equally by the
respective counties or cities interested. ...
The broader rule was recognized by the Texas
Legislature in Article 6796, where it is pro-
vided that adjoining counties may contract to
build bridges over boundary streams 'upon such
equitable terms as the commissioners' court of
each county interested may agree upon.'"

The Vaughn case, supra, defines a boundary as follows:

"The contention that Red River is not with-
in Texas and does not form her boundary is with-
out merit with respect to the subject matter of
this suit. While the south cut bank does legally
and technically form the boundary with reference
to Texas civil and criminal jurisdiction and
ownership over the territory, still, with reference
to preventing social and commercial intercourse
with her sister state, a primary object for her
entering the Union, the river forms the barrier
separating them. A bridge on either bank of the
river will not remove the barrier. The structure
required must necessarily rest on each high bank
of the river, span the entire territory between
them including the river, with its ends opening
into each of the states, and when this is done
there is of course but one structure with refer-
ence to its use. Therefore, from that viewpoint,
not only the banks, but the river and all terri-
tory necessary to be spanned by the bridge in
order to effect the purposes of social and business
intercourse between the states, is the true
boundary." (Emphasis added.)

Keiser v. Union County, 156 Pa. 315, 26 A. 1066, (1893), decided by the Supreme Court of Pennsylvania, expresses the view upon this question as follows:

"A stream is equally the boundary line, whether the line is its middle thread, or its westernmost ripple. To find the boundary, you must find the stream and then the part of it defined as the line; but, wherever that is, it is the stream, and it is the boundary only because of that fact. No matter whether the boundary is the middle or the edge of the stream, the bridge must connect with both banks; and the moment it does so, even if only an abutment, there is no longer any one county in which it is located." (Emphasis added.)

Therefore, it is our opinion that the County of Grayson is legally authorized to accept the proposed deed and the County of Grayson is authorized to expend tax monies for the operation and maintenance of said bridge.

## SUMMARY

The County of Grayson is legally authorized to accept the proposed deed which will convey a bridge across the Red River, and Grayson County is authorized to expend tax monies for the operation and maintenance of said bridge.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By David Longoria
DAVID LONGORIA
Assistant Attorney General

DL/vmo

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Arthur Sandlin
John Banks
C. Daniel Jones, Jr.

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright

Enclosure