AARON DUBITZKY, AND SIMCHA DUBITZKY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3876–69.    Filed April 9, 1973.

*Robert A. Jacobs,* for the petitioners.
*Jay S. Hamelburg* and *Steedly Young,* for the respondent.

QUEALY, *Judge:* Respondent determined deficiencies for the taxable

years 1963 and 1964 in the amounts of $33,357.81 and $57,349.03, respectively.

Certain issues having been agreed to by the parties, the sole question remaining for determination is whether for the taxable year 1964 petitioners are entitled to a deduction under section 164(a)(1) [1] on account of the transfer of certain real property and the payment of $9,540 to the Municipality of Nathanya, Israel.

### FINDINGS OF FACT

Some of the facts were stipulated and are incorporated herein by this reference.

Aaron and Simcha Dubitzky are husband and wife. Petitioners filed joint Federal income tax returns on the cash method of accounting for the taxable years 1963 and 1964 with the district director of internal revenue, Hartford, Conn. Their legal residence at the time of filing the petition was West Hartford, Conn. They currently reside in Miami Beach, Fla.

In 1928, petitioner [2] purchased a parcel of land located in what is now the Muncipality of Nathanya, Israel (hereinafter sometimes referred to as the Muncipality). The municipality is a political subdivision of the State of Israel. Subsequently, the Town Planning Ordinance of 1936 (hereinafter referred to as the ordinance) was enacted. The ordinance is a land-use statute which permits municipalities to provide for their own orderly growth and development through town planning. [3]

In the early 1950's, Nathanya submitted a master plan for the area within its jurisdiction pursuant to the ordinance, as amended. The

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Simcha Dubitzky is a petitioner only by virtue of filing a joint return with her husband. Any reference in the opinion to petitioner will therefore refer to Aaron Dubitzky.

[3] The general purpose of the ordinance is set out below its title: "An Ordinance to consolidate and amend the law of town and country planning."

The ordinance provides, in pertinent part, as follows:

"[Sec.] 12.—(1) Every Local Commission [Municipality] shall submit * * * an outline town planning scheme in respect of all lands within the town planning area, with the general object of securing proper conditions of health, sanitation and communication, and amenity and convenience in connection with the laying out and use of the land.

"[Sec.] 14.—(1) A Local Commission [Municipality] may at any time prepare a detailed town planning scheme with reference to any land within the town planning area, or may adopt with or without modifications, any town planning scheme proposed by all or any of the owners of any such land. * * *

"(2) A town planning scheme prepared or adopted under this section shall deal with all or any of the matters prescribed in section 12 of this Ordinance, and in addition shall, if it is intended to make provisions therefor, deal with all or any of the following matters:—

(a) the plotting-out of land as building areas and sites;

(b) the allotment of land for public purposes of all kinds including roads, open spaces,

master plan changed petitioner's land from agricultural use to a use suitable for building sites.

Subsequent to the zoning change, petitioner decided to subdivide and develop his property. As required by the ordinance, he submitted a parcellation scheme to the Nathanya Local Building and Town Planning Commission indicating the manner in which he wanted to divide his property.

Pursuant to its authority under the ordinance, the Municipality of Nathanya announced Detailed Town Planning Scheme No. 345 in the Official Gazette on May 8, 1952. Scheme No. 345 identified petitioner's land as parcel 9, block 8260, and as subsequently revised, proposed its division into 17 plots (Nos. 469-485). One plot was designated for a road (No. 584); four plots (Nos. 480-483), which were too small for petitioner to build on, were designated for sale to the adjoining owners to complete their plots for building purposes; and the remaining plots were designated for building sites.

Scheme No. 345, as approved, granted petitioner permission to subdivide his land on the condition he would transfer, without compensation, under section 27 of the ordinance, three of the plots (Nos. 473–475) designated for building sites and the plot (No. 485) designated for a road. These four plots amounted to approximately 30 percent of petitioner's land.[4] The building sites were registered in the name of the Township of Nathanya for the purpose of exchange for public open space. The scheme also required petitioner to offer for sale to the adjoining owners the four small plots (Nos. 480–483) needed for completion purposes. The sales were to be carried out directly between the parties themselves.

Petitioner, seeking to mitigate the impact of scheme No. 345, conducted a series of protracted negotiations with the Municipality offering to transfer other property in lieu of some or all of the land allo-

---

gardens, schools, places of religious worship, recreation grounds, car-parks, aerodromes, markets, slaughterhouses and cemeteries;

(c) dedication of roads or open spaces to the public;

\*  \*  \*  \*  \*  \*  \*

(i) the control of the size, height, design and external appearance of buildings;

\*  \*  \*  \*  \*  \*  \*

(k) the reconstruction of plots by the alteration of their boundaries or by combining \* \* \* two or more original plots held in separate ownership in common;

\*  \*  \*  \*  \*  \*  \*

[Sec.] 27. Notwithstanding anything in any other Ordinance contained, it shall be competent for a Local Commission [Municipality] to expropriate without compensation any land which is included in a town planning scheme, and is required for the purpose of constructing, diverting or widening any road, street, playground or recreation ground included in the scheme, \* \* \*"

[4] Sec. 27 places a 25-percent limitation on takings thereunder. However, petitioner claims that by extending sec. 32 (provision for a betterment tax) to what would normally be limited to one-quarter under sec. 27, the Municipality, in fact, appropriated 30 percent of petitioner's land under sec. 27.

cated to the Municipality under the scheme. Petitioner and the Municipality finally reached an understanding in December 1964. The agreement provided that the Municipality, in exchange for giving up its claim to two (Nos. 474–475) of the three building sites, were to receive: (a) Two (Nos. 482–483) of the smaller plots within the scheme which petitioner was required to offer for sale to the adjoining owners for completion purposes; (b) 20 percent of a nearby parcel of land identified as parcel No. 12, block 8260, in which petitioner was a coowner; and (c) IS£ 28,620 [5] in cash.[6] The cash payment was made to equalize the difference in cash value between the plots surrendered and the plots received in exchange. The petitioner received no compensation for the transfers of property to the Municipality.

In terms of general locality, parcel No. 9 lies just to the north of the Tchnerichovsky Elementary School while parcel No. 12 lies just to the south and west of such complex. The school complex is quite extensive and covers an area at least as large as the whole of parcel No. 9. The 20 percent of parcel No. 12 transferred to the Municipality under the 1964 agreement is adjacent to plot No. 16, also within parcel No. 12. Plot No. 16 was previously taken by the Municipality under Detailed Town Planning Scheme No. 391 and was designated for expansion of school grounds. The Municipality has since built a school gym on this plot.

In September 1967, one of the small plots (No. 483) which had been transferred to the Municipality under the 1964 agreement was sold for $5,400 by the Municipality pursuant to section 29 [7] of the ordinance, to an adjacent landowner for completion purposes. This plot represents 4 percent in area and 5 percent in value of the land transferred in 1964.[8]

As of July 2, 1970, the other plots which petitioner had transferred to the Municipality remained vacant and continued to be held by the Municipality.

---

[5] The equivalent of $9,540. The official exchange rate in effect during the years in question was 3 Israeli pounds to 1 U.S. dollar.

[6] In terms of area, the Municipality surrendered two plots, No. 474 and No. 475, measuring 933 and 929 square meters, respectively, in exchange for three plots, No. 482, No. 483, and 20 percent of parcel No. 12, measuring 193, 172, and 3,057 square meters, respectively.

[7] Sec. 29 provides:

"(1) Property which has been expropriated under the provisions of this Ordinance shall be dealt with in accordance with the scheme * * *

"(2) Notwithstanding anything contained in sub-section (1) hereof any property which has been expropriated under the provisions of this Ordinance may, * * * with the approval of the District Commission, be re-sold or let for any purpose."

[8] Plots No. 473, No. 482, No. 483, and 20 percent of parcel No. 12 have a total area of 4,380 square meters and an appraised value of $111,500. Plot No. 483 individually has an area of 172 square meters and was sold for $5,400. Plot No. 485 is not included in the above computation because petitioners are not claiming a deduction for such transfer.

In his return for the taxable year 1964, petitioner originally claimed a deduction under section 164(a)(1) on account of the transactions with the Municipality in the amount of $45,750, consisting of the adjusted basis of the property finally transferred to the Municipality, plus the $9,540 cash payment.

In his brief before the Court the petitioner changed his position and is now contending he is entitled to deduct the fair market value ($111,500) of the property transferred instead of just the adjusted basis, making the claimed deduction under section 164(a)(1) of $121,040 instead of $45,750. Neither amount, however, includes the value of plot No. 485 designated as a road. Petitioner concedes he is not entitled to a deduction for such transfer.

OPINION

In 1928, petitioner acquired certain unimproved property located in what is now the Municipality of Nathanya, Israel. Subsequently, the Town Planning Ordinance of 1936 was enacted, prescribing the terms and conditions upon which unimproved property might be subdivided. Sometime in the early 1950's, petitioner initiated proceedings for the subdivision of his property. Pursuant to its authority under the ordinance, the Municipality of Nathanya required a certain portion of such property to be deeded to it as a condition of granting petitioner the right to subdivide. In the ensuing negotiations, by an agreement consummated in 1964, the petitioner deeded certain property to the Municipality and paid the equivalent of $9,540, making a total of $121,040, in return for its permission to subdivide. The petitioner seeks to deduct this amount as foreign real property tax within the meaning of section 164(a)(1).[9]

In order for petitioner to be entitled to a deduction by virtue of section 164, he must first show that there has been a "tax." United States legal principles apply in determining such characterization. *Biddle* v. *Commissioner*, 302 U.S. 573, 578–579 (1938).

The revenue act does not define the term "taxes." The word must therefore be given its ordinary and commonly accepted meaning as established by judicial decisions. *United Gas Improvement Co.*, 25 B.T.A. 1382 (1932). In *Donald L. Cox*, 41 T.C. 161 (1963), we stated at page 164:

A tax, within the meaning of section 164(a) of the Code, is a revenue-raising levy by a governmental unit. *Bank of Mount Hope*, 25 B.T.A. 542 Cf. *Holeproof*

---

[9] Sec. 164(a)(1) provides:

(a) GENERAL RULE.—Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

(1) State and local, and foreign, real property taxes.

*Hosiery Co.*, 11 B.T.A. 547. It ·is a required contribution to the governmental revenue without option to pay or not to pay. *Sands* v. *Manistee River Imp. Co.*, 123 U.S. 288; *Day* v. *City of St. Augustine*, 139 So. 880 (Fla.) ; *Bloxton* v. *State Highway Commission*, 8 S.W. 2d 392 (Ky.) ; *People* v. *Schommer*, 63 N.E. 2d 744 (Ill.) ; *Ruler* v. *York County*, 139 Atl. 136 (Pa.). It is a levy and collection of revenue without relationship to a specific governmental privilege or service. *Rogge* v. *United States*, 128 F. 2d 800 (C.A. 9), certiorari denied 317 U.S. 656; *Bank of Mount Hope, supra; Holeproof Hosiery Co., supra.*

In order for the taking of property under the ordinance to be deemed a real property tax within the meaning of section 164(a)(1), as distinguished from a levy or fee assessed by a governmental authority for a particular privilege or for the purpose of providing local benefits accruing to the property, the exaction must be intended as a means of raising revenue for the carrying on of the Government. Frequently, the distinction rests upon the nuances of local law. Cf. *United Gas Improvement Co.*, 25 B.T.A. 1382 (1932) ; *Holeproof Hosiery Co.*, 11 B.T.A. 547 (1928). By its terms, the ordinance pursuant to which the petitioner transferred certain of his lots and made an equalizing payment in cash to the Municipality was intended to provide for the orderly development of the town, limiting the area which could be put to private use.

The petitioner seems to recognize that the terms and conditions imposed by statute for the subdivision of his land do not differ in substance from similar requirements which have been imposed on developers in the United States, either by statute or as a condition for rezoning. However, the petitioner contends that the statute in question was, in fact, utilized for the purpose of raising revenue and that amount thus required to be paid by the petitioner either in land or in cash constituted a general levy on all property owners. As presented to the Court, the facts simply will not sustain this position.

First, looking to the ordinance itself, it clearly was not intended as a revenue measure. The general purpose of the ordinance is set out just below its title: "An Ordinance to consolidate and amend the law of town and country planning." The powers, duties, and obligations of the municipalities as set forth in sections 12 and 14 clearly indicate that its primary purpose is town planning, not revenue raising. Under sections 27 and 32, a municipality can take up to 30 percent of any land which is to be subdivided into building sites. This is to ensure that the municipality is able to obtain adequate land for roads, streets, playgrounds, or recreation areas in the subdivision. Indeed, the property taken from petitioner in the instant case lies adjacent to a large elementary school complex and seems most suitable to meet the school's future needs.

Secondly, there is no evidence of any taking or expropriation beyond the terms of the statute. The petitioner entered into negotiations with

the Municipality in order to alleviate the impact of the statute upon the property which he wished to subdivide. As a result of such negotiations, the petitioner transferred certain other property to the Municipality and paid the sum of $9,540 in cash. The petitioner did not present the agreement which resulted in this compromise. From the record before the Court, there is nothing to indicate than any "tax" was paid by the petitioner.

Thirdly, while the petitioner presented the interrogatories of an attorney and a real estate appraiser familiar with the laws of Israel to support his claim that the statute was relied on by the Municipality for purposes of raising revenues, we do not regard this fact as a matter within the ken of expert testimony. The Court recognizes that foreign law as interpreted by the courts having jurisdiction is a fact upon which expert testimony is admissible. *Chemical Bank New York Trust Co.* v. *Kennedy*, 199 F. Supp. 256 (D. D.C. 1961), reversed on other grounds 319 F. 2d 720 (C.A. D.C. 1963), certiorari denied 375 U.S. 965 (1964). See also *Harris* v. *American International Fuel & Petroleum Co.*, 124 F. Supp. 878 (W.D. Pa. 1954). We do not, however, regard the allegation that the governmental authority does not follow its laws a matter of expert interpretation of the law. On the contrary, this is a question of fact and the facts available to the Court do not indicate that the Municipality was using the ordinance for revenue-raising purposes.

As of July 2, 1970, the Municipality had sold, pursuant to section 29 of the ordinance, only one of the plots (No. 483) exacted from petitioner in 1964. It represents only 4 percent in area and 5 percent in value of the land transferred in 1964. We view such sale and the proceeds derived therefrom as incidental to the general purpose and workings of the ordinance. It certainly does not justify the conclusion that the Municipality is regularly using the ordinance for the purpose of raising revenue. In addition, neither petitioner nor his expert witnesses have cited any other instances where the Municipality has used section 29 in anything other than an incidental way.

The other plots (No. 473, No. 482, and 20 percent of parcel No. 12) transferred to the Municipality in 1964 remain vacant and continue to be held by the Municipality. We find it incorrect for petitioner to ascribe to the Municipality from the sale of plot No. 483 any intent to sell the other plots and put the proceeds in its general treasury. Plot No. 483 was designated by Detailed Town Planning Scheme No. 345 for sale to adjoining owners for completion purposes. We view the sale of such plot as nothing more than the Municipality complying with the mandate of the scheme. The petitioner would have been required to sell it to the same adjoining landowner had he kept the plot.

The mere fact the Municipality may be entitled to sell the other plots under section 29 of the ordinance does not mean it will or is required to do so.

From the record as a whole, it clearly appears that the primary, if not the sole, purpose of the ordinance was to enable municipalities to plan for their growth in an orderly fashion. The fact that, incidentally, amounts realized from sales under section 29 inured to the general revenues of the Municipality in no way detracts from the purpose of the ordinance. The requirement of the ordinance that the landowner give up a specified portion of his land, albeit involuntarily, does not make the exaction a "tax" within the meaning of section 164 of the Code.

Moreover, even assuming the ordinance may have some of the incidents of a tax, it cannot be assumed that petitioner lost anything as a result of the subdivision of his property. See *Jordon Perlmutter*, 45 T.C. 311 (1965); *Harold E. Wolfe*, 54 T.C. 1707 (1970); *Charles O. Grinslade*, 59 T.C. 566 (1973). Even though the petitioner may have had no choice except to give up a portion of his property, this requirement of the ordinance was a necessary incident of his ownership. Satisfaction of this requirement did not reduce the quantum of his interest. In other words, before the exaction, petitioner owned a piece of property subject to the Municipality's right to take 30 percent thereof for the privilege of subdividing. After the exaction, petitioner had 70 percent of his property and the right to subdivide. What petitioner had after the exaction is no less than what he had before the exaction. Indeed, it could well be that what he had afterwards was more valuable than what he had before.

In accordance with the foregoing, we hold that petitioner's claim for deduction under section 164(a)(1) must be denied. Since the deduction under section 164 is denied, we need not decide whether petitioner was in the real estate business in 1964.

*Decision will be entered under Rule 50.*