T.C. Memo. 2000-393


UNITED STATES TAX COURT


JACOB AND CHANA PINSON, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent*


Docket Nos. 7561-98,     7562-98,  Filed December 28, 2000.
             7563-98,     7564-98,
             7565-98,     7566-98,
             7567-98,    19353-98,
            19354-98,    19355-98,
            19356-98,    19357-98,
            19358-98,    19359-98.

---

[1] Cases of the following petitioners are consolidated herewith: B. Mayer and Ella Zeiler, docket No. 7562-98; Joseph and Sara Deitsch, docket No. 7563-98; Joshua and Rachel Sandman, docket No. 7564-98; Deitsch Plastic Company, Inc., docket No. 7565-98; Mordecai and Bonnie Deitsch, docket No. 7566-98; David and Sara Deitsch, docket No. 7567-98; B. Mayer and Ella Zeiler, docket No. 19353-98; Mordecai and Bonnie Deitsch, docket No. 19354-98; Deitsch Plastic Company, Inc., docket No. 19355-98; Joshua and Rachel Sandman, docket No. 19356-98; David and Sara Deitsch, docket No. 19357-98; Jacob and Chana Pinson, docket No. 19358-98; Joseph and Sara Deitsch, docket No. 19359-98.

* This opinion supplements our previously filed Memorandum Opinion in Pinson v. Commissioner, T.C. Memo. 2000-208.

Robert J. Percy, Bruce I. Judelson, Richard A. Levine,[2]
Mortimer M. Caplin,[3] Richard E. Timbie,[3] and Christopher S.
Rizek,[3] for petitioners.

Stephen C. Best and Bradford A. Johnson, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

NIMS, Judge:  On July 6, 2000, the Court filed its opinion
in this case, T.C. Memo. 2000-208, in which we disallowed
petitioners' claimed foreign tax credits.  We further held that
petitioners could not reserve the right, as part of a Rule 155
computation, to elect to take deductions for foreign taxes in
lieu of the disallowed foreign tax credits.  This issue, raised
for the first time on brief in only the most summary fashion, had
not previously been addressed through the pleadings or at trial
and was therefore deemed untimely.

Subsequently, in August of 2000, a motion for
reconsideration and separate motions to amend were filed wherein
certain of petitioners moved for reconsideration of that portion

---

[2] Richard A. Levine has entered an appearance as counsel for
petitioners at docket Nos. 7561-98, 7563-98, 7564-98, 7567-98,
19356-98, 19357-98, 19358-98, and 19359-98.

[3] Mortimer M. Caplin, Richard E. Timbie, and Christopher S.
Rizek have each entered an appearance as counsel for petitioners
at docket Nos. 7561-98, 7563-98, 7564-98, 7565-98, 7566-98, 7567-
98, 19354-98, 19355-98, 19356-98, 19357-98, 19358-98, and 19359-
98.

of the Court's opinion relating to the deductions and for leave to amend their respective petitions in order to place the deduction issue properly before the Court.

Petitioners at docket Nos. 7561-98, 7563-98, 7564-98, and 7567-98 seek to amend their petitions by adding the following paragraph:

> 8. Petitioners are entitled to claim a deduction for the foreign income taxes they paid to the State of Israel in 1991 ($296,554) and 1992 ($704,450) pursuant to Treasury Regulation §1.901-1 in the event any of the paid taxes are not allowed as a credit under Sections 901-908.

Similarly, petitioners at docket Nos. 19356-98, 19357-98, 19358-98, and 19359-98 seek to amend their respective petitions by adding the following paragraph:

> 8. Petitioners are entitled to claim a deduction for the foreign income taxes they paid to the State of Israel in 1994 ($291,695) pursuant to Treasury Regulation §1.901-1 in the event any of the paid taxes are not allowed as a credit under Sections 901-908.

On September 12, 2000, respondent filed notices of objection to petitioners' motions. Petitioners then responded thereto with filings on September 26, 2000. Upon receipt of these submissions, the Court directed by an order dated October 5, 2000, that the parties file memoranda of law addressing certain procedural issues raised by the motions.

In the ensuing interval, on October 10, 2000, respondent filed a motion for reconsideration asking the Court to clarify its analysis of petitioners' reporting on their Forms 1116,

Foreign Tax Credit, of payments received from Flocktex Industries, Ltd. (FIL). Petitioners were then by order given an opportunity to submit any objections to this motion. The memoranda relating to petitioners' motions and petitioners' response to respondent's motion were thereafter received and filed in November of 2000. This supplemental opinion addresses these various motions.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The term "petitioners" is used herein to refer to those petitioners asking for relief by means of the subject motions and related filings.

I. Petitioners' Motions To Amend and for Reconsideration

We begin with petitioners' motions to amend and for reconsideration. Rule 41(a) provides in effect that after the pleadings are closed, "a party may amend a pleading only by leave of Court or by written consent of the adverse party, and leave shall be given freely when justice so requires." Like rule 15(a) of the Federal Rules of Civil Procedure, from which it is derived, Rule 41(a) reflects "a liberal attitude toward amendment

of pleadings." 60 T.C. 1089 (explanatory note accompanying promulgation of Rule 41). The U.S. Supreme Court has interpreted the "freely given" language of the civil rule as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given." * * * [Foman v. Davis, 371 U.S. 178, 182 (1962).]

We conclude that the foregoing standard renders leave to amend appropriate in the circumstances of the instant case. Although the summary fashion in which the deduction issue was initially presented by petitioners gave us insufficient information to decide that the prejudice to respondent would not outweigh that to petitioners, the parties through their various motions, responses, and memoranda of law have now had the opportunity to fully explain their positions. While we continue to look with disfavor upon petitioners' initial failure to appropriately plead the deduction issue, we are at this point satisfied that the potentially prejudicial factual and procedural concerns cited in our original opinion do not justify barring petitioners from properly raising this issue through amendment. When performed in light of the postopinion submissions, a

weighing of the relative potential for prejudice to petitioners and to respondent convinces us that justice will be better served by allowing leave to amend.

First, before addressing more substantive matters, we make a practical observation. Petitioners allege that the estimated cost to each of the four moving parties, if deductions for the $1,292,699 paid apiece in Israeli income taxes are denied, will be more than $1 million in additional U.S. tax, interest, and penalties. (The $1,292,699 figure derives from adding the $296,554, $704,450, and $291,695 in taxes paid by each moving party in 1991, 1992, and 1994, respectively.) The economic impact of our decision thus will not be insignificant.

We now turn to the substance underlying the relief claimed and its relationship to the record developed in this case. As explained in our earlier opinion, payment of taxes to a foreign government may give rise to either a deduction or a credit. See secs. 164, 901. Section 164(a)(3) provides that a deduction is allowed for foreign income taxes. In lieu of this deduction, section 901(a) and (b)(1) permits a taxpayer to elect a credit for foreign income taxes.

Subject to limited exceptions not relevant here, the deduction and credit provisions operate on a mutually exclusive basis with respect to a particular tax year. See sec. 275(a)(4)(A). A taxpayer is precluded from deducting foreign

taxes for a given year if he or she "chooses to take to any extent the benefits of section 901". Id. Nonetheless, under section 901(a) and section 1.901-1(d), Income Tax Regs., an election to claim either the deduction or the credit may be made or changed at any time before the expiration of the special 10-year period of limitations prescribed in section 6511(d)(3)(A). Both parties in the present case apparently agree that an election may be changed if such a claim is properly raised prior to or in the course of litigation, but they differ as to whether that was done here.

Neither section 164 nor regulations promulgated thereunder explicitly define the term "foreign income taxes". Case law, however, does offer some guidance. In general, U.S. legal principles apply in determining the character of an alleged foreign tax under section 164. See Dubitzky v. Commissioner, 60 T.C. 29, 33 (1973). With respect to section 901, regulations set forth in detail the requirements for a tax to qualify as a foreign income tax within the meaning of that section. See sec. 1.901-2, Income Tax Regs. Among other things, "A foreign levy is an income tax if and only if--(i) It is a tax; and (ii) The predominant character of that tax is that of an income tax in the U.S. sense." Sec. 1.901-2(a)(1), Income Tax Regs. Hence, for either a deduction or a credit, the remittance must be in the

nature of a compulsory income tax under U.S. law. The same factual predicate thus applies under both provisions.

Respondent's notices of deficiency disallowing the credits included statements similar to that in docket No. 19358-98: "It is further determined that since you have not established that the foreign taxes were paid and/or incurred the credits are not allowed in their entirety." Subsequently, the parties stipulated that David Deitsch, Joseph Deitsch, Jacob Pinson, and Rachel Sandman "made the following income tax payments to the State of Israel during the taxable years 1991, 1992 and 1994", and then listed the corresponding dollar amounts under the heading "Israeli Income Tax Paid". Petitioners apparently, and we believe reasonably, viewed these stipulations as settling the question of whether the payments were properly characterized as foreign income taxes within the meaning of sections 164 and 901.

At the trial which followed submission of the above stipulations, neither party presented evidence relating to the nature of the taxes paid. The availability of the section 901 credit was litigated on the basis of whether the payments petitioners received from their Israeli corporation were U.S. or foreign source income. Considerations of income source can reduce or eliminate the amount that may be taken as a credit under section 901, see sec. 904(a), but have no bearing on the section 164(a)(3) deduction. Nonetheless, on brief respondent

later contended as an alternative argument that petitioners had failed to show that the Israeli tax payments satisfied the creditability requirements of section 901 and the regulations thereunder. We did not reach this argument in our previous opinion as it was mooted by our decision relating to the source of petitioners' income.

Here then is the situation with which we are now faced. A plain reading of the parties' stipulations would seem to indicate that respondent did not reserve the right to question the nature of the remittances to Israel when he stipulated that they were "Israeli Income Tax Paid". Such, in turn, appears to have lulled petitioners into assuming that respondent had conceded the payments to be foreign income taxes as required for either a credit or the alternative deduction. Consequently, petitioners further assumed, the factual predicate having been established, that the deductions fell within the standard for items which may be taken into account under Rule 155.

Under Rule 155, the parties "submit computations pursuant to the Court's determination of the issues". Rule 155(a). Thus the Rule constitutes "the mechanism whereby the Court is enabled to enter a decision for the dollar amounts of deficiencies and/or overpayments" resulting from the Court's substantive disposition. Cloes v. Commissioner, 79 T.C. 933, 935 (1982). A Rule 155 proceeding is an appropriate vehicle for dealing with "'purely

mathematically generated computational items'." Harris v. Commissioner, 99 T.C. 121, 124 (1992) (quoting Home Group, Inc. v. Commissioner, 91 T.C. 265, 269 (1988), affd. 875 F.2d 377 (2d Cir. 1989)), affd. 16 F.3d 75 (5th Cir. 1994). It may not, however, be used to raise "new issues", Rule 155(c), which generally has been construed in this context to mean matters which would require consideration of evidence not already contained in the record, see Harris v. Commissioner, supra at 124; Cloes v. Commissioner, supra at 935-937; Estate of Street v. Commissioner, T.C. Memo. 1994-568. Hence, while petitioners' entitlement to section 164 deductions was in one sense an unpled new matter, the underlying factual predicate, as petitioners interpreted respondent's stipulations, was not a new issue under the standard enunciated for Rule 155.

In this connection, we note that respondent had the opportunity to present evidence at trial regarding the characterization of the taxes, beyond the stipulations, and chose not to do so. Moreover, even now in extensive postopinion submissions respondent has not alluded to any evidence which might have been adduced to show the taxes were other than "income taxes", or to any further requirements for the deductions.

Thus, while we acknowledge that respondent's litigation strategy may perhaps have been affected by petitioners' failure expressly to raise the deduction issue prior to trial, we believe

that the circumstances of this case reveal an even greater potential for prejudice to petitioners. To recapitulate, we focus particularly on the similarity of the underlying substantive requirements for a credit versus a deduction, respondent's apparently unreserved stipulations and opportunity to adduce evidence to the contrary, and petitioners' reliance on the standard set forth in case law for Rule 155 consideration. In this context, concerns of justice counsel us not summarily to refuse petitioners the opportunity under Rule 41(a) to plead this issue and thereby to render it at least a possible subject of a Rule 155 computation. We thus will grant petitioners' motions to amend.

Furthermore, now that such amendment brings this issue properly before the Court, we shall reconsider that portion of our prior opinion which declined, on the grounds that the matter had been raised solely on brief, to permit petitioners to reserve the right to deduct foreign taxes as part of a Rule 155 computation. We therefore will grant petitioners' motion for reconsideration to the limited extent of the supplemental findings of fact and conclusions below.

In our memorandum opinion, we found the following:

> Commencing in 1987, FIL also began making payments by wire transfer directly to accounts in the name of "Flocktex shareholders". For the years at issue, the recipients and amounts of these payments are set forth below:

|  | 1991 | 1992 | 1993 | 1994 |
|---|---|---|---|---|
| David Deitsch | $875,000 | $2,350,000 | -0- | $1,000,000 |
| Mordecai Deitsch | -0- | -0- | -0- | -0- |
| Joseph Deitsch | 875,000 | 2,350,000 | -0- | 1,000,000 |
| Rachel Sandman | 875,000 | 2,350,000 | -0- | 1,000,000 |
| B. Mayer Zeiler | -0- | -0- | -0- | -0- |
| Jacob Pinson | 875,000 | 2,350,000 | -0- | 1,000,000 |

Through withholding, income taxes were paid by the recipients to the State of Israel on the amounts shown above. Letters issued by Israeli authorities certifying receipt of the income taxes specify that the sums were due in respect of "commission fees" from FIL.

Additionally, as noted above, the parties stipulated, without any reservations, the respective amounts of "Israeli Income Tax Paid" by the movants. These stipulations, which we now incorporate as explicit findings of fact, read:

Petitioner David Deitsch made the following income tax payments to the State of Israel during the taxable years 1991, 1992 and 1994:

| Year | Flocktex Payment | Israeli Income Tax Paid |
|---|---|---|
| 1991 | $875,000 | $296,554 |
| 1992 | 1,100,000 | 322,273 |
| 1992 | 1,250,000 | 382,177 |
| 1994 | 1,000,000 | 291,695 |

Petitioner Joseph Deitsch made the following income tax payments to the State of Israel during the taxable years 1991, 1992 and 1994:

| Year | Flocktex Payment | Israeli Income Tax Paid |
|---|---|---|
| 1991 | $875,000 | $296,554 |

| | | |
|---|---|---|
| 1992 | 1,100,000 | 322,273 |
| 1992 | 1,250,000 | 382,177 |
| 1994 | 1,000,000 | 291,695 |

Petitioner Jacob Pinson made the following income tax payments to the State of Israel during the taxable years 1991, 1992 and 1994:

| Year | Flocktex Payment | Israeli Income Tax Paid |
|---|---|---|
| 1991 | $875,000 | $296,554 |
| 1992 | 1,100,000 | 322,273 |
| 1992 | 1,250,000 | 382,177 |
| 1994 | 1,000,000 | 291,695 |

Petitioner Rachel Sandman made the following income tax payments to the State of Israel during the taxable years 1991, 1992 and 1994:

| Year | Flocktex Payment | Israeli Income Tax Paid |
|---|---|---|
| 1991 | $875,000 | $296,554 |
| 1992 | 1,100,000 | 322,273 |
| 1992 | 1,250,000 | 382,177 |
| 1994 | 1,000,000 | 291,695 |

Based on the foregoing stipulations, we hold that petitioners' respective payments of Israeli income taxes are deemed to satisfy the creditability requirements of section 901 and the regulations thereunder and to constitute foreign income taxes within the meaning of section 164(a)(3). Consequently, a deduction for these remittances may be included in the parties' Rule 155 computations.

II.  Respondent's Motion for Reconsideration

Having disposed of petitioners' motions, we next turn our attention to respondent's motion for reconsideration.  In our memorandum opinion, we considered the characterization, and corresponding tax treatment, of two types of payments received by petitioners from FIL:  (1) Payments made directly to certain of petitioners (termed "special commissions"), and (2) payments made to a partnership and reported by certain of petitioners as their distributive shares of partnership income.  We refused to accept petitioners' argument that these amounts were in substance dividends and should be treated as such for tax purposes.  In so doing, we highlighted a number of representations contained in the record which convinced us that both types of payments must be treated as compensation.  Included amongst those representations was petitioners' designation of the payments on their Forms 1116 as "General limitation income".  We further cited the general rule that compensation would be identified for purposes of this form as "General limitation income" while dividends would typically be placed in the "Passive income" category.

Against this background, respondent states on motion that petitioners' Form 1116 reporting is consistent with our holding that the payments are properly characterized as consulting or compensation income.  However, respondent asks us to clarify that petitioners' classifying of the payments from FIL as general

limitation income is not in and of itself inconsistent with the payments' being in the nature of dividends, suggesting that such clarification "would prevent any misunderstanding of the relevant authorities by the general public."

Respondent points out that FIL appears to be a controlled foreign corporation (CFC), as defined in section 957, and therefore would be subject to the "look-thru" rules of section 904(d)(3). Pursuant to that section, dividends received by U.S. shareholders of a CFC would typically be characterized pro rata in accordance with the nature of the various types (if more than one) of the underlying income of the CFC. See sec. 904(d)(3)(D); see also sec. 1.904-5(c)(4), Income Tax Regs. Hence, dividends from a CFC may in many cases properly be categorized as general limitation income rather than as passive income.

Petitioners join in respondent's motion and further urge the Court to reconsider and hold (1) that petitioners are not precluded from arguing substance over form with respect to the special commissions, and (2) that petitioners have met their burden of showing the payments to be dividends in substance. (Petitioners do not dispute for purposes of this motion that the payments made to the partnership were taxable as compensation for services.) Petitioners argue that in light of the now-conceded consistency of their Form 1116 reporting with their foreign source dividends assertion, the "fact that the return preparer

reported the payments on the wrong line of the returns and, in some cases, misdescribed them on schedules attached to returns" should not estop petitioners from prevailing on this point.

Although FIL's status as a CFC was not previously raised or relied upon by either party, we believe that the clarification advocated by respondent is warranted to prevent any confusion. We shall grant respondent's motion and supplement our memorandum opinion to the extent of the above explanation regarding the treatment of dividends received from a CFC. However, we decline petitioners' invitation to alter our original holding that the special commission payments must be treated as U.S. source compensation income.

Contrary to petitioners' averments, we are satisfied that, regardless of the interpretation to be placed on petitioners' Form 1116 reporting, the standards governing substance over form arguments continue to support the result reached in our previous opinion. At best, we are still faced with a record fraught by ambiguity and inconsistencies. Moreover, not a single document contained therein makes any affirmative or explicit representation that the payments were in the nature of dividends. To the contrary, and we summarize only briefly here, petitioners' Forms 1040, U.S. Individual Income Tax Returns, and Schedules B, Interest and Dividend Income, do not show the special commissions as dividends. FIL's financial records designate the payments as

selling expenses.  Letters from the Israeli administration state that "Flocktex did not pay dividends to shareholders * * * but instead paid a special commission."

We further observe that petitioners raised in their post-trial briefing the alternative contention that even if the payments from FIL were considered compensation, they were nonetheless foreign source income.  Since identifying the amounts as general limitation income would appear to be equally consistent with this scenario, we find the Forms 1116 reveal little about the transactions at issue.  A Form 1116 categorization potentially supportive of multiple characterizations does not outweigh the balance of the record.

Hence, whatever can be inferred from petitioners' Forms 1116, we simply see no honest and consistent respect for the alleged substance in either reporting or other representations and actions that would justify a result different from that reached in our memorandum opinion.

To reflect the foregoing,

> Appropriate orders will be issued granting petitioners' motions to amend, petitioners' motion for reconsideration, and respondent's motion for reconsideration.